UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BILLY W.,[1]
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:20-cv-798
Litkovitz, M.J.

ORDER

Plaintiff Billy W. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for supplemental security income ("SSI"). This matter is before the Court on plaintiff's Statement of Errors (Doc. 23), the Commissioner's response in opposition (Doc. 29), and plaintiff's Reply (Doc. 30).

I. Procedural Background

Plaintiff protectively filed an application for SSI in April 2017, alleging disability since August 20, 2014, due to chronic anxiety, cognitive disorder, and memory loss, lumbar pain, left ankle pain with numbness, left leg recurrent osteomyelitis, liver problems, headaches, and seizures. The application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge ("ALJ") Matthias D. Onderak. Plaintiff and a vocational expert ("VE") appeared and testified at the ALJ hearing on November 5, 2019. On November 19, 2019, the ALJ issued a decision denying plaintiff's SSI application. This decision became the final decision of the Commissioner when the Appeals Council denied review on August 10, 2020.

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for SSI, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 416.920(a)(4)(i)-(v), 416.920 (b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

**B. The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] has not engaged in substantial gainful activity since April 18, 2017, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The [plaintiff] has the following severe impairments: degenerative disc disease, left lower extremity impairment, mild arthrosis in the right shoulder, seizure disorder, personality disorder, depression, and anxiety (20 CFR 416.920(c)).
>
> 3. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, [the ALJ] finds that the [plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except he can never climb ladders, ropes, or scaffolds. He cannot work at unprotected heights. He cannot drive a motor vehicle as a part of his job duties. He should not work around or with dangerous moving machinery. He cannot do a job that requires the use of foot controls. The [plaintiff] can learn and engage in rote tasks that require the exercise of little independent judgment or decision-making and can be learned from short demonstration within thirty days. He must work in a stable setting where there is little change in terms of tools used, the processes employed, or the setting itself, and change, where necessary, is introduced gradually. He would not be able to work a job that required him to engage in work-related interactions with the general public. He could not perform jobs that involve working in close coordination with co-workers. Therefore, he could work jobs that entail only occasional and superficial work-related interactions with his coworkers. Lastly, the [plaintiff] can perform jobs that entail no more than occasional and superficial interaction with his supervisor to complete work tasks throughout the workday.
>
> 5. The [plaintiff] has no past relevant work (20 CFR 416.965).
>
> 6. The [plaintiff] was born [in] . . . 1978 and was 38 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

3

7. The [plaintiff] has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the [plaintiff] does not have past relevant work (20 CFR 416.968).

9. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 416.969 and 416.969(a)).[2]

10. The [plaintiff] has not been under a disability, as defined in the Social Security Act, since April 18, 2017, the date the application was filed (20 CFR 416.920(g)).

(Tr. 13-29).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

---

[2] Relying on the VE's testimony, the ALJ found that plaintiff would be able to perform the requirements of representative sedentary, unskilled occupations such as document preparer (25,000 jobs in the national economy), inspector (20,000 jobs in the national economy), and sorter (15,000 jobs in the national economy). (Tr. 28-29).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

### D. Specific Errors

In a single assignment of error, plaintiff alleges the ALJ reversibly erred in evaluating the medical source opinions by "substitut[ing] his medical opinion for that of the treating, examining, and even state agency non-examining medical sources[.]" (Doc. 23 at PAGEID 1149). Plaintiff specifically argues that the ALJ erred in evaluating the opinions of Dr. Matthew Noordsij-Jones, plaintiff's treating primary care physician, and Dr. Jeffrey Bishop, plaintiff's treating psychologist. (*Id*. at PAGEID 1149-52).

The Commissioner argues that the ALJ's evaluation of the medical source opinions is supported by substantial evidence. (Doc. 29).

#### a. Evaluating medical opinions

The ALJ correctly applied the new regulations for evaluating medical opinion evidence as plaintiff filed his SSI claim after March 27, 2017. *See* 20 C.F.R. § 1520c (2017); *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)). These new regulations eliminate the "treating physician rule" and deference to treating source opinions, including the "good reasons" requirement for the weight afforded to such opinions.[3] *Id*. Under the new regulations, the

---

[3] For claims filed prior to March 27, 2017, a treating source's medical opinion on the issue of the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). *See also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). "The Commissioner

5

Commissioner will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)[4], including those from your medical sources." 20 C.F.R. § 416.920c(a). Rather, the Commissioner will consider "how persuasive" the medical opinion is. 20 C.F.R. § 416.920c(b).

In determining the persuasiveness of a medical opinion, the ALJ considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 416.920c(c)(1)-(5). The most important factors the ALJ must consider are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). With respect to the supportability factor, "[t]he more relevant the objective medical evidence[5] and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 416.920c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ." 20 C.F.R. § 416.920c(c)(2). The ALJ is required to "*explain* how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. 20 C.F.R. § 416.920c(b)(2) (emphasis added). Conversely, the ALJ "may, but [is] not required to, explain"

---

is required to provide 'good reasons' for discounting the weight given to a treating-source opinion." *Id.* (citing 20 C.F.R. § 404.1527(c)(2)).

[4] A "prior administrative medical finding" is defined as "[a] finding, other than the ultimate determination about whether the individual is disabled, about a medical issue made by an MC [medical consultant] or PC [psychological consultant] at a prior administrative level in the current claim." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850. For clarity, the Court will refer to the limitations opined by the state agency reviewing physicians and psychologists as "assessments" or "opinions."

[5] Objective medical evidence is defined as "signs, laboratory findings, or both." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.

how he/she considered the relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation. *Id.* However, where two or more medical opinions or prior administrative findings about the same issue are equally persuasive, the ALJ must articulate how he or she "considered the other most persuasive factors in paragraphs (c)(3) through (c)(5). . . ." 20 C.F.R. § 404.1520c(b)(3). Finally, the ALJ is not required to articulate how he or she considered evidence from nonmedical sources. 20 C.F.R. § 404.1520c(d).

### b. Dr. Noordsij-Jones

On October 19, 2018, Dr. Noordsij-Jones completed a check-box physical questionnaire. (Tr. 665-66). Plaintiff's diagnoses included chronic low back and left ankle pain, anxiety, chronic hepatitis C, BPH (Benign prostatic hyperplasia), and seizure disorder. (665). Dr. Noordsij-Jones indicated that plaintiff's health status was improving with treatment. (*Id.*). Dr. Noordsij-Jones checked the box indicating that plaintiff's standing, walking, and lifting were affected by his medical conditions. (Tr. 666). Dr. Noordsij-Jones indicated that plaintiff's sitting was not affected. (*Id.*). Dr. Noordsij-Jones opined that plaintiff was moderately limited in the ability to bend, markedly limited in the ability to perform repetitive foot movements, and not limited in the ability to reach, handle, see, hear, and speak. (*Id.*). Dr. Noordsij-Jones noted that plaintiff had "significant limitations due to his [left] ankle pain [and] anxiety." (*Id.*).

On March 24, 2019, Dr. Noordsij-Jones completed a second questionnaire on behalf of plaintiff. (Tr. 793-98). Dr. Noordsij-Jones noted that he first saw plaintiff on September 6, 2011. (Tr. 793). Dr. Noordsij-Jones opined that plaintiff's lifting and carrying were affected by his impairments because plaintiff had "chronic [left] ankle [and] back pain." (*Id.*). Dr. Noordsij-Jones wrote "unknown" next to the question, "How many pounds can the individual lift and carry[?]" (Tr. 794). Dr. Noordsij-Jones opined that plaintiff's ability to stand and walk were

7

affected by his impairments because plaintiff "had multiple surgeries on [left] leg [and] ankle causing chronic pain [and plaintiff] also [had] chronic back trouble. . . ." (*Id*.). Dr. Noordsij-Jones wrote "unknown" next to the question, "How many hours can the individual stand and walk[?]" (*Id*.). Dr. Noordsij-Jones opined that plaintiff's ability to sit, see, hear, speak, reach, handle, finger, feel, push, and pull were not affected by his impairments. (Tr. 794-95).

Dr. Noordsij-Jones also opined that plaintiff experienced pain or fatigue that would impact his ability to sustain or persist in activities during the workday because plaintiff had "chronic back [and left] ankle pain." (Tr. 796). Dr. Noordsij-Jones opined that plaintiff would be absent from work more than three times a month. (Tr. 797). Dr. Noordsij-Jones wrote "unknown" next to the question, "On average, in an 8 hour work day, how often would you anticipate the claimant would be distracted by either his pain or psychological distress?" (*Id*.). Dr. Noordsij-Jones checked the box marked "No" next to the question, "Does claimant have the residual functional ability on a sustained basis (in an eight hour work day) to do: Sedentary work; that is, lift 10 lbs. maximal/or carry such articles as small tools. Such work involves primarily sitting but the individual can sit/stand and walking/standing is required only occasionally." (Tr. 797). Dr. Noordsij-Jones also checked the box marked "No" next to the question, "Does claimant have the residual functional ability on a sustained basis (in an 8 hour work day) to do: Light work; that is, lift 20 lbs. maximal, with frequent lifting and/or carrying of objects weighing up to 10 lbs. Walking or standing required to a significant degree; or work may involve sitting most of the time, with some pushing and pulling or arm and/or leg controls." (*Id*.). In the "Remarks" section, Dr. Noordsij-Jones stated that plaintiff's "chronic physical problems are exacerbated by his underlying psychiatric conditions." (Tr. 798).

8

In addition to the two questionnaires, Dr. Noordsij-Jones also made "multiple statements" throughout the record that plaintiff was "under his care and may not return to work at that time." (Tr. 25, citing Tr. 636, 640-57, 664).

### c. The ALJ properly evaluated Dr. Noordsij-Jones' opinions.

The ALJ first considered the "multiple statements" made by Dr. Noordsij-Jones that plaintiff was "under his care and may not return to work at that time." (Tr. 25). The ALJ found these statements "not persuasive" because there was no "function-by-function analysis or explanation given," the "medical evidence of record" did not support Dr. Noordsij-Jones' conclusions, and "a determination on the ability to work is an issue reserved for the Commissioner." (*Id.*) (citations omitted).

The ALJ next evaluated Dr. Noordsij-Jones' October 19, 2018 opinion and found it "somewhat persuasive" because the evidence "support[ed]" the presence of plaintiff's "anxiety and left ankle issues." (Tr. 25). In finding this opinion to be "somewhat persuasive," the ALJ stated the following:

> However, Dr. Noordsij-Jones' opinion is not overly detailed or explained. He notes improvement with treatment, but does not indicate where improvement occurs or how this affected functioning (Ex. C13F/3). Still, there is some persuasive value and the medical evidence of record somewhat supports the statements. The residual functional capacity addresses these limits.

(*Id.*).

Next, the ALJ found Dr. Noordsij-Jones' March 24, 2019 opinions "regarding the claimant's physical functioning [] not persuasive because they are not supported by the objective evidence and are not even consistent with []his own clinical findings." (Tr. 25-26). The ALJ explained:

> On the form from March 2019, Dr. Noordsij-Jones stated under medical findings that the claimant has chronic left ankle and back pain (Ex. C17F). He does not state

9

> how much the claimant can lift, but says the claimant is limited in his standing and walking, but not in sitting. He does not detail how limited, however. This statement supports sedentary exertion; however, he later checked the box on the form indicating the claimant could not perform sedentary or light work. He then goes on to opine the claimant would miss three or more days a month. As to [the] explanation for his opinion, all that is stated is that the claimant's chronic physical problems are exacerbated by his psychological problems. There is no mention of objective support at all. There is no explanation. Furthermore, Dr. Noordsij-Jones['] opinions are not consistent with his own objective findings noting only some decreased (4/5) strength in the left lower extremity, but no pain on a straight-leg raise test, and spine and extremity range of motion are normal (See C18F and C21F).

(Tr. 25).

Plaintiff does not appear to allege any error in the ALJ's weighing of Dr. Noordsij-Jones' October 19, 2018 opinion. Rather, plaintiff contends the ALJ erred in discounting Dr. Noordsij-Jones' (1) opinion that plaintiff would be unable to work due to a combination of physical and psychological impairments (Doc. 23 at PAGEID 1149, citing Tr. 636-37, 640-56, 665-66, 793-98) and (2) opined limitation in the March 2019 opinion that he "would be absent from work more than three times per month as a result of his impairments or treatment." (*Id*., citing Tr. 797). Both of these arguments, however, are without merit because the ALJ's evaluation of Dr. Noordsij-Jones' opinions is supported by substantial evidence.

First, citing select treatment notes, plaintiff argues that Dr. Noordsij-Jones "repeatedly opined" that plaintiff would be unable to work due to a combination of physical and psychological impairments. (Doc. 23 at PAGEID 1149, citing Tr. 636-37, 640-56, 665-66, 793-98). The ALJ, however, correctly determined that whether a person is disabled within the meaning of the Social Security Act is an issue reserved to the Commissioner. 20 C.F.R. § 404.1520b(c)(3)(i) ("Statements that you are or are not disabled, blind, able to work, or able to perform regular or continuing work" suggest a particular disability determination, which is an issue reserved to the Commissioner). *See also Warner v. Comm'r of Soc., Sec*., 375 F.3d 387,

10

390 (6th Cir. 2004) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician.")) (brackets omitted). The ALJ's decision to discount Dr. Noordsij-Jones' opinion on this basis is therefore supported by substantial evidence.

Second, plaintiff argues that the ALJ erred because Dr. Noordsij-Jones "opined that [plaintiff] would be absent from work more than three times per month as a result of his impairments or treatment." (Doc. 23 at PAGEID 1149, citing Tr. 797). The ALJ thoroughly examined the record evidence and reasonably concluded that plaintiff's symptoms were not as severe as Dr. Noordsij-Jones had opined. (Tr. 25-26). The ALJ specifically found that Dr. Noordsij-Jones' opined limitations were inconsistent with the objective evidence of record and Dr. Noordsij-Jones' own clinical findings. (Tr. 25-26). Plaintiff does not point to any record evidence that is contrary to the ALJ's finding. Accordingly, the ALJ's evaluation of the opinion evidence from Dr. Noordsij-Jones is supported by substantial evidence.

### d. Dr. Bishop

Plaintiff began seeing Dr. Bishop on August 23, 2018. (Tr. 669, 931). On September 21, 2018, Dr. Bishop completed a check-box mental assessment form. (Tr. 667-68). Dr. Bishop opined that plaintiff was moderately limited in the ability to remember locations and work-like procedures, understand and remember very short and simple instructions, carry out detailed instructions, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without special supervision, make simple work-related decisions, interact appropriately with the general public, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, respond appropriately to changes in the work setting, travel in unfamiliar places or use public

11

transportation, and set realistic goals or make plans independently of others. (Tr. 667). Dr. Bishop opined that plaintiff was markedly limited in the ability to understand and remember detailed instructions, maintain attention and concentration for extended periods, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and accept instructions and respond appropriately to criticism from supervisors. (*Id*.).

On February 11, 2019, Dr. Bishop completed a second questionnaire on behalf of plaintiff. (Tr. 669-71). Dr. Bishop listed plaintiff's diagnosis as F29 Unspecified psychosis. (Tr. 669). Dr. Bishop stated that plaintiff's signs and symptoms included poor memory, oddities of thought, perception, speech, and behavior, perceptual disturbances, personality change[6], social withdrawal or isolation, decreased energy, intrusive recollections of a traumatic experience, paranoia or inappropriate suspiciousness, feelings of guilt/worthlessness, difficulty thinking or concentrating, hostility and irritability, and suicidal ideation or attempts. (*Id*.). Dr. Bishop stated that plaintiff's psychiatric condition did not exacerbate plaintiff's experience of pain or any other physical symptoms. (*Id*.). Dr. Bishop opined that plaintiff would be off task 20% or more of an average typical work week and would be absent from work three times a month because of his impairments or treatment. (*Id*.). Dr. Bishop noted that plaintiff had "moderate" to "marked" limitations in his ability to understand, remember, or apply instructions or work tasks; "none-mild" to "extreme" limitations in his ability to concentrate, persist, or maintain pace; and "moderate" to "marked" limitations in his ability to adapt or manage oneself in a work setting. (Tr. 670-71). Dr. Bishop opined that plaintiff's "overall ability to learn, recall, or use

---

[6] The Court notes that Dr. Bishop wrote "yeah sometimes" next to "Personality change." (Tr. 669)

information to perform work activities" was "extreme," meaning plaintiff was not able to function in this area independently, appropriately, effectively, and on a sustained basis. (Tr. 671). Dr. Bishop also opined that plaintiff's overall ability to relate to and work with supervisors, co-workers, and the public was "extreme[ly]" limited. (*Id*.). Dr. Bishop stated that plaintiff's ability to focus attention on work activities, stay on task at a sustained rate, regulate his emotions, control his behavior, and maintain well-being in a work setting was "marked[ly]" limited, meaning he had a seriously limited ability to function in this area. (*Id*.). Dr. Bishop opined that plaintiff would not be able to perform regular full-time, competitive work on a sustained basis without missing work more than two times per month, being off-task more than 15% of the workday, or needing additional breaks due to plaintiff's impairments, medical appointments, and/or treatments. (*Id*.).

### e. The ALJ properly evaluated Dr. Bishop's opinions.

The ALJ considered Dr. Bishop's opinions but found them "not persuasive." (Tr. 27). In evaluating Dr. Bishop's September 2018 opinion, the ALJ noted that Dr. Bishop's opinion was on a "check-mark box form" that failed to "define what 'marked' means" in the context of the form. (*Id*.). The ALJ also stated that "Dr. Bishop offer[ed] no explanation at all for his opinion (Ex. C13F)." (*Id*.). In evaluating Dr. Bishop's February 2019 opinion, the ALJ noted that Dr. Bishop completed this form "a few months later" yet found that plaintiff "now had marked to extreme limitations, both of which [were] not defined on the form and no explanation [was] given." (*Id*.). The ALJ also found that the "evidence of record [did] not support such listing-level severity" because plaintiff "routinely ha[d] normal thought content, normal thought processes, intact memory, fair insight and judgment, normal to mild attention and concentration, and mildly depressed and anxious mood (*See Exhibits* C19F and C20F)." (*Id*.).

The ALJ's decision finding Dr. Bishop's opinions "not persuasive" is substantially supported by the evidence. The ALJ reasonably determined that Dr. Bishop's opinion that plaintiff had numerous marked and extreme limitations was not supported by his own progress notes and inconsistent with plaintiff's repeated normal examinations. (Tr. 27).

Specifically, on August 23, 2018, Dr. Bishop reported that plaintiff had normal speech, thought processes, and fair judgment and insight. (Tr. 932-33). Dr. Bishop noted that plaintiff had no homicidal, suicidal, or violent ideations. (*Id.*). Dr. Bishop stated that plaintiff's memory and attention/concentration were impaired, and plaintiff had a slightly depressed and anxious mood and affect. (Tr. 933). On September 21, 2018, Dr. Bishop reported that plaintiff had normal speech, thought processes, orientation, memory, attention/concentration, and language; fair judgment and insight; no suicidal, homicidal, or violent ideations; and slightly dysphoric and anxious mood, and constricted affect. (Tr. 937-38). On October 19, 2018, Dr. Bishop noted that plaintiff had normal speech, thought processes, judgment and insight, orientation, memory, attention/concentration, and language; he had no suicidal, homicidal, or violent ideations; and he had a slightly anxious mood and slightly constricted affect. (Tr. 942-43).

On January 21, 2019, Dr. Bishop reported that plaintiff was seen "after a lengthy absence" during which he ran out of his medications. (Tr. 946). On mental status examination, plaintiff displayed normal speech, normal thought processes, and no abnormal or psychotic thoughts; he had no suicidal, homicidal, or violent ideations; he had normal to fair judgment and insight; normal memory, language, and attention/concentration; he was alert and oriented times three; and he displayed a neutral mood and slightly constricted affect. (Tr. 947-48). Plaintiff's February 25, 2019, March 25, 2019, and April 22, 2019 mental status examinations were identical to plaintiff's January 21, 2019 examination. (Tr. 954-55, 961-62, 968-69). On

February 25, 2019, Dr. Bishop noted that plaintiff's depression and anxiety were "improving" because he was back on his medication. (Tr. 956). On March 25, 2019 and April 22, 2019, Dr. Bishop similarly reported that there was "no change" in plaintiff's depression, and plaintiff's anxiety and auditory hallucinations were both "stable." (Tr. 963-64; 970-71).

The ALJ reasonably determined that Dr. Bishop's opinions were not supported by his own notes. (Compare Tr. 669: Dr. Bishop reports "Poor Memory," with Tr. 937, 942, 948, 955, 962, 969: mental status examinations showing "Normal" memory; compare Tr. 669: Dr. Bishop reports "Oddities of thought, perception[,] speech, [and] behavior," with Tr. 937, 942, 947-48, 954-55, 961-62, 968-69: mental status examinations showing "Normal" thought processes and "Normal" speech; compare Tr. 669: Dr. Bishop reports "Suicidal ideation or attempts," with Tr. 937, 942, 948, 955, 962, 969: mental status examinations showing "Absent" suicidal ideations; compare Tr. 669: Dr. Bishop reports "Difficulty thinking or concentrating," with Tr. 938, 943, 948, 955, 962, 969: mental status examinations showing "Normal" attention/concentration). The ALJ also reasonably determined that the marked and extreme limitations Dr. Bishop noted were inconsistent with the normal and mild findings on examination. The ALJ's decision finding Dr. Bishop's opinions "not persuasive" is therefore substantially supported by the record.[7]

Plaintiff argues that the ALJ erred in evaluating Dr. Bishop's opinions because Dr. Bishop's opinions are "consistent with the opinions of consultative examiner Katherine A.

---

[7] Plaintiff also argues that the ALJ erred in "rejecting Dr. Bishop's opinion that [plaintiff] had marked functional limitations because Dr. Bishop does not define what 'marked' means." (Doc. 23 at PAGEID 1151) (internal quotations omitted). The Court notes that Dr. Bishop's first questionnaire does not define the term "marked" (Tr. 667-68), but Dr. Bishop's February 2019 questionnaire includes a definition section defining "None – Mild," "Moderate," "Marked," and "Extreme." (Tr. 670). This second form defines a "Marked" limitation as "seriously limited ability to function in this area independently, appropriately, effectively, and on a sustained basis, but not precluded." (*Id.*). Although one of the forms filled out by Dr. Bishop defines this term, plaintiff fails to explain how the ALJ committed any error in the evaluation of Dr. Bishop's opinions. As explained above, the ALJ reasonably concluded that Dr. Bishop's opinions are inconsistent with the medical evidence of record. Accordingly, any error in the ALJ's decision on this basis is harmless.

Myers, Psy.D" and "State agency reviewing psychologist Robert Baker, Ph.D." (Doc. 23 at PAGEID 1150). Other than merely reciting Drs. Myers and Baker's opinions, plaintiff fails to explain how the opinions are consistent with one another. Significantly, plaintiff fails to explain how the ALJ erred in evaluating the opinions from Drs. Myers or Baker.

The ALJ found Dr. Myers' opinion "somewhat persuasive" and determined that plaintiff's "residual functional capacity is consistent with limiting him [plaintiff] to routine and rote tasks with little change and with limited social interaction and no public contact [which is] supported by Dr. Myer's clinical findings." (Tr. 27). Plaintiff fails to explain how the ALJ erred in this regard and what specific portions of Dr. Bishop's opinions are consistent with Dr. Myers' findings.

Likewise, the state agency psychological consultants determined that plaintiff would have moderate limitations in all four areas of the "paragraph B" criteria. (*See* Tr. 26). The ALJ adopted this finding by concluding that plaintiff had moderate limitations in his ability to understand, remember, or apply information, interact with others, concentrate, persist, or maintain pace, and adapt or manage himself. (Tr. 15-17). The ALJ indicated that this finding is consistent with Dr. Myers' consultative opinion. (Tr. 26). The ALJ "alter[ed] the opinion of the State agency's psychological consultants for purposes of clarity consistent with the overall evidence and with their moderate findings." (*Id.*). The ALJ found that residual functional capacity "greatly limits the claimant as to the mental and social aspects at work to ensure he does not have an exacerbation of symptoms. . . ." (Tr. 27). The ALJ also stated he gave "adequate consideration to medical records and opinions from treating sources, the examination and evaluation report by the consulting doctor, prior administrative findings from non-examining state agency medical consultants, and the claimant's subjective complaints and reports of daily

16

living activities." (Tr. 27-28). Plaintiff fails to allege how the ALJ erred in this regard. Rather, the ALJ's evaluation of the evidence is substantially supported by the evidence. Accordingly, plaintiff's sole assignment of error is overruled.

### III. Conclusion

Based on the foregoing, plaintiff's Statement of Errors (Doc. 23) is **OVERRULED**, and the Commissioner's non-disability finding is **AFFIRMED**. **IT IS THEREFORE ORDERED** that judgment be entered in favor of the Commissioner and this case is closed on the docket of the Court.

Date: 3/21/2022

Karen L. Litkovitz
Chief United States Magistrate Judge